IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Adam Medina,<br><br>       Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>       Respondents. | No. CV-15-126-TUC-DCB (BPV)<br><br>**REPORT & RECOMMENDATION** |

Petitioner James Adam Medina, has filed a *pro se* Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. (Doc. 1). Respondents have filed an Answer to Petition for Writ of Habeas Corpus (Doc. 18) and Petitioner has filed a Reply (Doc. 28).

Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court dismiss the Petition as untimely filed.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

   A.   **STATE PROCEEDINGS**

On December 16, 2010, Petitioner pled guilty in state court to two counts of sexual

conduct with a minor. (Doc. 18 at 2 & Exhs. A, B). On February 7, 2011, the date set for sentencing, Petitioner asked to withdraw from the plea agreement. (Doc. 18, at 2, Exh. C). The court continued the matter until February 28, 2011 and granted the parties leave to file "'briefs and/or information deemed necessary regarding sentencing issues and/or the defendant's motion to withdraw.'" (Doc. 18, at 2 (quoting Exh. C)). Petitioner's counsel, David McDaniel, did not file anything in support of Petitioner's motion to withdraw from the plea agreement and Petitioner ultimately changed counsel. (Doc. 18 at 2 & Exh. D). Petitioner's new counsel, Verne Hill, filed a motion to continue sentencing, which the trial court denied. (*Id.*). On February 28, 2011, the trial court sentenced Petitioner to consecutive, 10-year terms of imprisonment. (Doc. 18, Exh. E).

On March 9, 2011, Petitioner filed a notice of post-conviction relief ("PCR") pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (Doc. 18, Exh. F). The time for filing the petition was extended several times, and the PCR Petition was ultimately filed by appointed counsel on November 21, 2011. (Doc. 18 at 2 & Exhs. G, H, I). Petitioner asserted a claim of ineffective assistance of counsel based on his counsel's failure to provide him with critical disclosure, failure to investigate regarding that disclosure, and failure to file anything before sentencing to support Petitioner's request that he be allowed to withdraw from the plea agreement. (Doc. 18 at 2 & Exh. I). The trial court, after holding an evidentiary hearing where Petitioner and his trial counsel testified, denied Petitioner's PCR Petition on April 12, 2012.[1] (Doc. 18 at 3 & Exhs. M, N). Petitioner filed a *pro se* Petition for Review in the Arizona Court of appeals on July 16, 2012. (Doc. 18 at 3 & Exh. O). On November 27, 2012, after accepting additional materials filed by Petitioner, the Arizona Court of Appeals accepted review but denied relief. (Doc. 18 at 3 & Exh. P, Q, R, S). Petitioner received multiple extensions of time to file a petition for review in the Arizona Supreme Court, with the final extension expiring on February 24, 2014. (Doc. 18 at 3 & Exh. T). Petitioner failed to file his

---

[1] Although the court's ruling is dated April 11, 2012, it was not filed until April 12, 2012. (*See* Doc. 18, Exh. N).

- 2 -

petition for review by February 24, 2014 and, on March 13, 2014, the Arizona Supreme Court dismissed the matter. (Doc. 18, Exh. T). The mandate issued on April 28, 2014. (Doc. 18, Exh. U).

Meanwhile, after the trial court's denial of Petitioner's First PCR Petition on April 12, 2012, but before filing a petition for review in the appellate court, Petitioner filed a Second PCR Petition on April 17, 2012. (Doc. 18, Exh. V). The Second PCR proceeding was stayed while Petitioner's initial PCR Petition was before the appellate court. (Doc. 18, Exhs. Y, Z, AA). After the stay was lifted, Petitioner, through appointed counsel, filed his Second PCR Petition on May 22, 2013. (Doc. 18, Exhs. W, BB, CC). Petitioner asserted a claim of ineffective assistance of "appellate counsel" in failing to argue that the trial court had improperly considered his lack of acceptance of responsibility and lack of remorse in imposing consecutive sentences. (Doc. 18, Exh. CC). On August 29, 2013, the trial court found no merit to the claim raised in Petitioner's Second PCR Petition. (Doc. 18, Exh. FF). Respondents assert, and Petitioner does not dispute, that "[t]here is no record of a petition for review to the court of appeals from this denial[]" of Petitioner's Second PCR Petition. (Doc. 18 at 4).

### B.   FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

On March 30, 2015[2], Petitioner filed the instant federal habeas Petition, raising the following grounds for relief: (1) ineffective assistance of trial and sentencing counsel ("Ground One"); (2) deprivation of Petitioner's federal due process rights because the trial court denied sentencing counsel Hill's motion to continue sentencing ("Ground Two"); (3) trial counsel McDaniel was ineffective because he failed to provide Petitioner with "critical disclosure" ("Ground Three"); (4) Petitioner is "actually innocent"

---

[2] On March 30, 2015, Petitioner signed and placed the instant Petition for federal habeas relief "in the prison mailing system." (Doc. 1 at 11). A federal habeas petition is deemed filed when handed by the inmate to a prison official for mailing. *See Houston v. Lack,* 487 U.S. at 270–71 (1988); *Roberts v. Marshall*, 627 F.3d 768, 770 n. 1 (9th Cir. 2010) ("[w]hen a prisoner gives prison authorities a habeas petition or other pleading to mail to court, the court deems the petition constructively 'filed' on the date it is signed."). The Court deems the Petition commencing this action as filed on March 30, 2015.

("Ground Four"); and (5) prosecutorial misconduct in violation of Petitioner's rights to due process and equal protection. ("Ground Five").  (*See* Doc. 1).

## II. DISCUSSION

Because Petitioner filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").  Respondents contend that Petitioner's March 30, 2015 federal habeas Petition is untimely filed under the AEDPA.  Alternatively, Respondents contend that some of Petitioner's claims are non-cognizable on federal habeas review, other claims are procedurally defaulted, and the cognizable claims that are not defaulted are without merit.  Petitioner counters that his Petition is timely filed and he is entitled to relief on the merits of his claims.

### A. COMMENCEMENT OF THE AEDPA LIMITATIONS PERIOD

The AEDPA "imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court." *Patterson v. Stewart,* 251 F.3d 1243, 1245 (9th Cir. 2001)(citing 28 U.S.C. § 2244(d)(1)) Pursuant to section 2244:

> The limitations period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  Additionally, as discussed *infra,* the statute of limitations may be subject to statutory or equitable tolling or other equitable exceptions.

Respondents contend that Petitioner's case became final on direct review on February 24, 2014, which was the date that Petitioner's petition for review was due in the Arizona Supreme Court.  (Doc. 18 at 6).  According to Respondents, under 28 U.S.C.

- 4 -

2244(d)(1)(A), Petitioner had until February 24, 2015 to file a petition for federal habeas relief. Because Petitioner did not file his federal habeas Petition until March 30, 2015, Respondents assert that the Petition is untimely under the AEDPA. Respondents alternatively argue that even if Petitioner's case became final on direct review on the later date of March 13, 2014, when the Arizona Supreme Court issued its order dismissing Petitioner's case for failure to file his petition for review by the February 24, 2014 deadline, then he had one year from that date to seek federal habeas relief, thus, still rendering his March 30, 2015 Petition untimely filed.

Petitioner argues that his Petition is timely filed because the mandate on his direct review proceeding did not issue until April 28, 2014 leaving him until April 29, 2015 to file a federal habeas petition, which renders the March 30, 2015 Petition timely. (Doc. 28 at 4; *see also* Doc. 1 at 11).[3]

To determine the timeliness of the Petition, the Court must first determine the date that Petitioner's February 28, 2011 judgment of conviction and sentencing "became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. §2244(d)(1)(A). Generally, "direct review" encompasses a defendant's direct appeal following the judgment of conviction and sentencing. However, Arizona criminal defendants like Petitioner, who stand convicted pursuant to a guilty plea, waive their "right to a conventional direct appeal under Arizona law, but [they] retain the right to seek review in an 'of-right proceeding' under Arizona Rule of Criminal Procedure 32." *Summers v. Schriro,* 481 F.3d 710, 711 (9th Cir. 2007). The Ninth Circuit has held that Arizona's "Rule 32 of-right proceeding for plea-convicted

---

[3] In his Petition, Petitioner states that the mandate issued on April 28, 2014. (Doc. 1 at 11). According to Petitioner, because the memorandum decision attached to the mandate did not pertain to his case, he filed a motion for clarification which was denied on May 6, 2014. (*Id.*). "To stay within time frame and meet the one-year period of limitation for this court, Medina has submitted this Writ of Habeas Corpus" on March 30, 2015. (*Id*). In his Reply, Petitioner states that the mandate issued on April 28, 2014 and then also states that it issued on April 4, 2014, but argues that the one-year statute of limitations expired on April 29, 2015. (Doc. 28 at 4). If Petitioner's position is correct, then his federal habeas Petition would be timely whether the mandate issued on April 4 or April 28, 2014.

- 5 -

1  defendants is a form of 'direct review' within the meaning of §2244(d)(1)(A)." *Id.* at
2  716−17.  In applying §2244(d)(1)(A), the Ninth Circuit has also held that when an
3  Arizona defendant does not file a petition for review in the Arizona Supreme Court on
4  direct review, his "direct appeal was final. . . [on] the date that he allowed his time for
5  seeking review in the [Arizona] Supreme Court to expire." *Hemmerle v. Schriro,* 495
6  F.3d 1069, 1073−74 (9th Cir. 2007) (holding that conclusion of proceeding on direct
7  review under § 2244(d)(1)(A) occurred on the date that petitioner's ability to seek review
8  in the Arizona Supreme Court elapsed and not when the mandate issued).  Furthermore,
9  the United States Supreme Court has held that "for a state prisoner who does not seek
10 review in a State's highest court, the judgment becomes 'final' [under §2244(d)(1)(A)]
11 on the date that the time for seeking such review expires." *Gonzalez v. Thaler,* __ U.S.
12 __, 132 S.Ct. 641, 646 (2012).

13       Here, there is no dispute that Petitioner's Rule 32 of-right proceeding, which is
14 considered a form of direct review under *Summers*, was timely initiated on March 9,
15 2011.  (*See* Doc. 18 at 6 & Exh. F).  The trial court denied relief on April 12, 2012, and
16 the appellate court granted review on Petitioner's Petition for Review but denied relief on
17 November 27, 2012.  (Doc. 18, Exhs. N, S).  Although Petitioner received several
18 extensions for filing a petition for review in the Arizona Supreme Court, that court denied
19 Petitioner's request for an extension beyond the February 24, 2014 deadline previously
20 set.  (*See* Doc. 18 at 6 & Exh. T).  Because Petitioner did not file a petition for review in
21 the Arizona Supreme Court by the February 24, 2014 deadline, the judgment became
22 final on that date.  *See Gonzalez,* 132 S.Ct. at 656 ("[W]ith respect to a state prisoner who
23 does not seek review in a State's highest court, the judgment becomes 'final' under
24 2244(d)(1)(A) when the time for seeking such review expires. . ."); *Hemmerle,* 495 F.3d
25 at 1073 (direct review concludes on the date of expiration of time for seeking review in
26 the Arizona Supreme Court); *Summers,* 481 F.3d at 717 (same).[4]  Consequently, under

---

[4] The Arizona District Court has held that in some situations issuance of the mandate may be a factor when determining whether a petition for post-collateral relief *tolls* the AEDPA statute of limitations under 28 U.S.C. §2244(d)(2).  *See  Celaya v.*

- 6 -

§2244(d)(1)(A), Petitioner had until February 24, 2015 to file a federal habeas petition. *See Patterson,* 251 F.3d at 1247 (applying the "anniversary method" of Rule 6(a) of the Federal Rules of Civil Procedure to calculate the expiration date of AEDPA's one-year statute of limitations). Petitioner's March 30, 2015 Petition is untimely filed absent tolling.

Respondents are also correct that even if the March 13, 2014 date of the Arizona Supreme Court's order dismissing Petitioner's action for failure to timely file a petition for review is used in the statute of limitations calculation, thus giving Petitioner until March 13, 2015 to file his federal habeas petition, Petitioner's March 30, 2015 Petition is still time barred absent tolling. However, use of the March 13, 2014 date for commencement of the limitations period is contrary to the holding in *Gonzalez* that the clock under §2244(d)(1)(A) starts running when the time for seeking review in the state supreme court expires, which in this case occurred on February 24, 2014. *See Gonzalez,* 132 S.Ct. at 656.

### B.     THE LIMITATIONS PERIOD IS NOT SUBJECT TO STATUTORY TOLLING

The next question is whether tolling applies so as to render the instant Petition timely filed. Under the statutory tolling provision of §2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgement or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2). As to statutory tolling under

---

*Stewart,* 691 F.Supp.2d 1046, 1054–55 (D. Ariz. 2010), *aff'd* 497 Fed. Appx. 744, 2012 WL 5505736, *1 (9th Cir. 2012). The question whether the AEDPA limitations period is tolled under §2244(d)(2) because a "properly filed application for State post-conviction or other collateral relief . . . is pending. . ." is a separate and distinct inquiry from the question of when the statute of limitations commences to run in the first instance under 28 U.S.C. §2244(d)(1)(A). *See Gonzalez,* 132 S.Ct. at 654 n.10 (noting distinction); *Hemmerle,* 495 F.3d at 1074 (same). As to the latter, the Supreme Court has been clear that in a case such as this, where the petitioner failed to seek review in the state supreme court, "the judgment becomes 'final' under 2244(d)(1)(A) when the time for seeking such review expires. . . ." *Gonzalez,* 132 S.Ct. at 656. *See also Hemmerle,* 495 F.3d at 1074 (direct review proceeding was final on the date of expiration for seeking review in the Arizona Supreme Court, and not the date the mandate issued). On the instant facts, this Court is bound by *Gonzalez* and *Hemmerle*. Accordingly, Petitioner's direct review proceeding became final for purposes of §2244(d)(1)(A) on February 24, 2014, when the time expired for him to file a petition for review in the Arizona Supreme Court. *See id.*

§2244(d)(2), the fact that Petitioner filed a second petition for post-conviction relief, which was not an of-right PCR petition, does not alter the conclusion that Petitioner's Petition is untimely filed. Petitioner's Second PCR proceeding commenced on April 17, 2012 when he filed his notice and concluded on August 29, 2013 when the trial court denied relief. *See Isley v. Arizona Dep't. of Corrections,* 383 F.3d 1054 (9th Cir. 2004) (for purposes of §2244(d)(2), in Arizona, a PCR petition is deemed pending upon proper filing of the notice). (*See also* Doc. 18, Exhs. V, FF). Respondents concede that Petitioner had 35 days from the date of the trial court's ruling to seek appellate court review. (*See* Doc. 18 at 6−7 (citing Ariz.R.CrimP. 32.9(c); Ariz.R.Crim.P. 1.3(a); *State v. Savage,* 117 Ariz. 535, 356, 573 P.2d 1388, 1389 (1978)). Petitioner did not seek appellate court review. Because, during this same time period, Petitioner was still pursuing his Rule 32 of-right proceeding (*i.e.*, direct review), the AEDPA statute of limitations had not yet begun to run. Furthermore, because Petitioner's Second PCR proceeding was no longer pending on February 24, 2014, when the AEDPA statute of limitations commenced upon conclusion of direct review, Petitioner does not qualify for statutory tolling under §2244(d)(2). The same conclusion also results if the calculation is based on the March 13, 2014 date of the Arizona Supreme Court's order dismissing Petitioner's action.

## C.   THE LIMITATIONS PERIOD IS NOT SUBJECT TO EQUITABLE TOLLING

To qualify for equitable tolling, Petitioner must establish that he has been pursuing his rights diligently, and some extraordinary circumstance stood in his way. *Holland v. Florida,* 560 U.S. 631, 649 (2010). A petitioner's *pro se* status, on its own, is not enough to warrant equitable tolling. *See, e.g., Johnson v. United States*, 544 U.S. 295, 311 (2005); *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006). In addition, a petitioner's miscalculation of when the limitations period expired does not constitute an "extraordinary circumstance" warranting equitable tolling. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Petitioner makes no equitable tolling claim here and he has not proffered any extraordinary circumstance that would justify equitable tolling. Nor

has he shown that an external impediment hindered the diligent pursuit of his rights. On the instant record, equitable tolling is unavailable.

### D. THE ACTUAL INNOCENCE EXCEPTION DOES NOT APPLY

One other consideration remains as to whether Petitioner's untimely filing should be excused. The United States Supreme Court has recognized an exception to the AEDPA statute of limitations for a claim of actual innocence. *McQuiggin v. Perkins,* __ U.S. __, 133 S.Ct. 1924 (2013). The *Perkins* Court adopted the actual innocence gateway previously recognized in *Schlup v. Delo,* 513 U.S. 298, 314–15 (1995), for excusing the bar to federal habeas corpus review of procedurally defaulted claims. *Id.* at 1928. The rule announced in *Perkins* does not provide for an extension of the time statutorily prescribed by the AEDPA, but instead is an equitable exception to excuse untimeliness. *Id.* at 1935. Petitioner has not specifically argued that the actual innocence exception under *Perkins* should apply to excuse his untimely Petition. However, he has raised an actual innocence claim at Ground IV of his Petition. (Doc. 1 at 9). He also argues in his Reply that his "actual innocence claim is tied directly to the exclusion of potentially exculpatory evidence by trial counsel and encouraged by the prosecutor." (Doc. 28 at 7; *see also id.* at 12 ("The exclusion of the evidence by defense counsel, aided by the prosecution, resulted in a fundamental miscarriage of justice denying [P]etitioner a fair trial and right to present a complete defense in favor of his actual innocence.")). The Court addresses Petitioner's allegations of actual innocence in the context of the timeliness analysis.

There is some debate as to whether a petitioner who pleads guilty can later make an actual innocence claim. *See Smith v. Baldwin,* 510 F.3d 1127, 1140 n. 9 (9th Cir. 2007) (assuming without deciding that actual innocence claim is available to pleading defendant). Assuming for purposes of the instant analysis that Petitioner's guilty plea does not preclude him from pursuing an actual innocence argument, his argument nonetheless fails to qualify for the exception under *Perkins.*

Petitioner was indicted on six counts of child molestation and sexual contact with

a minor. (Doc. 18, Exh. K at 1). On December 16, 2010, Petitioner entered a guilty plea to two counts of sexual conduct with a minor in the second degree. (Doc. 18 Exh. K (internal Exh. 1 at 11–13)). In establishing the factual basis for his guilty plea, Petitioner admitted: having oral sex with the victim by having her "suck my penis"; on another occasion, he and the same victim had sexual intercourse; and that both of the incidents occurred when the victim was fourteen years of age. (*Id.*). At Ground IV of his federal Petition, Petitioner claims that he is actually innocent, that he has been "claiming his innocence from the very beginning", and that he "'never' intended to take a plea." (Doc. 1 at 9; *see also* Doc. 18, Exh. GG at 19 (Petitioner testifying: "I never intended in taking a plea because of my innocence."[5])). To support his claim, Petitioner cites, among other things, his testimony at the evidentiary hearing during his Rule 32 of-right proceeding that he "definitely wouldn't have taken a plea…" if he had been aware of police report that he claims his defense counsel did not show him and of which he was unaware until Rule 32 counsel showed it to him.[6] (Doc. 1 at 9 (citing Doc. 18, Exh. GG at 19)).

It is undisputed that the information Petitioner claims he did not know about involved the victim's statements to police that she had had sex with three other men (two teachers and a hall monitor) around the same time as her alleged encounters with Petitioner. (*See* Doc. 18, Exh. I at 4; Doc. 18 Exh. GG at 18; *see also* Doc. 18, Exh. I at 5 (the victim reported that the three men "traded favors with [her] in exchange for sex.")).

---

[5] Reasons Petitioner gave as to why he accepted the plea offer included that: trial counsel advised that doctors and specialists would testify that the victim was suicidal because of Petitioner; that trial counsel advised if Petitioner testified, "they could bring my other case—my prior into it and they could call the—my prior victim in"; and Petitioner "felt that [the plea]. . . was my last chance, the only thing I had to do, where I wouldn't spend the rest of my life in prison, I had no evidence to go into court with at that time." (Doc. 18, Exh. GG, at 18–19; *see also* Doc. 18, Exh. I (internal exh. E at 20–21) (at sentencing Petitioner stated that he did not touch the victim or do the things the victim said he did and he only took the plea because he did not want to spend the rest of his life in prison).

[6] The issue during the Rule 32-of right proceeding involved Petitioner's claim that his trial counsel was ineffective for failing to inform him about the disclosure prior to entry of the guilty plea and for failing to investigate regarding the disclosure. (*See* Doc. 18, Exh. I).

1   Upon investigation during the Rule 32 of-right proceeding, two of the three men[7] would
2   have testified that they did not have any inappropriate contact with the victim and that
3   neither the police nor Petitioner's trial counsel contacted them. (Doc. 18, Exh. I at 4).
4   According to Petitioner, police reports also reflected that the "police conducted no
5   serious or substantial follow-up" with regard to the victim's allegation against the three
6   other men, and Petitioner argued during the Rule 32 of-right proceeding that the lack of
7   follow-up indicated that "even police do not seem to believe the alleged victim in this
8   case." (*Id.* at 4−5). Further, it appears that the evidence against Petitioner was not
9   forensic, but was testimonial and primarily, if not entirely, based upon the credibility of
10  the victim. (*See* Doc. 18, Exh. GG at 62 (Petitioner's trial counsel testifying to this
11  effect)).

12        The Supreme Court has not yet recognized actual innocence as grounds for habeas
13  relief absent an independent constitutional violation in the underlying state criminal
14  proceedings. *Herrera v. Collins*, 506 U.S. 390, 400–401 (1993); *see House v. Bell*, 547
15  U.S. 518, 555 (2006) (declining to resolve the open question of whether freestanding
16  actual innocence claims are possible); *see also Perkins,* 133 S.Ct. at 1931 (the Supreme
17  Court has left open the question whether a freestanding actual innocence claim
18  constitutes grounds for habeas relief in a non-capital case). In *Herrera*, the Court
19  explained that its body of "habeas jurisprudence makes clear that a claim of 'actual
20  innocence' is not itself a constitutional claim, but instead a gateway through which a
21  habeas petitioner must pass to have his otherwise barred constitutional claims considered
22  on the merits." 506 U.S. at 404; *see Schlup,* 513 U.S. at 313–15 (distinguishing
23  procedural claims of innocence from substantive claims of innocence, and holding that a
24  claim of actual innocence may be raised to avoid a procedural bar to consideration of the
25  merits of a petitioner's constitutional claims).

26        The Ninth Circuit has noted that a majority of the Justices in *Herrera* would have
27  supported a claim of free-standing innocence. *Jackson v. Calderon*, 211 F.3d 1148, 1165
28

---

[7] The third man, a hall monitor, could not be located. (Doc. 18, Exh. I at 4).

- 11 -

1  (9th Cir. 2000). The court has emphasized, however, that the standard for establishing a freestanding claim of actual innocence is "'extraordinarily high' and . . . the showing [for a successful claim] would have to be 'truly persuasive.'" *Carriger v. Stewart,* 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera,* 506 U.S. at 417).

"Evidence that merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of actual innocence." *Jones v. Taylor*, 763 F.3d 1242, 1251 (9th Cir. 2014). At a minimum, the petitioner must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id.* (citing *Herrera*, 506 U.S. at 442–44 (Blackmun, J., dissenting)). That is, he must demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 327); *see Perkins*, 133 S. Ct. at 1928. "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The new evidence must be reliable, and the reviewing court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.* at 332. *See also Perkins,* 133 S.Ct. at 1935−36.

Given these high standards, even if Petitioner's free-standing actual innocence claim were cognizable, it is plainly without merit. First, Petitioner's reliance on his own statements in the state court record declaring his innocence and speculating about the victim's motive for her accusations against him does not constitute new evidence and does not satisfy the showing necessary for actual innocence. *See e.g. Schlup,* 513 U.S. at 324 (petitioner must present new evidence−whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence−that was not presented at trial).

Moreover, as to the victim's report about her sexual conduct with three other men,

it is questionable that report, the subsequent investigator affidavits and the other related police report constitute "new evidence" for purposes of *Schlup*. Even assuming they do, that evidence indicates nothing as to Petitioner's actual innocence. That evidence does not necessarily support a rational finding that the victim's accusations against him were lies. That two of the other men, who were both teachers, who the victim said she also had sexual contact with denied such behavior may indicate more about their credibility than the minor victim's. Further, Petitioner's speculation about why the police apparently did not investigate these men have little bearing as to Petitioner's actual innocence. Instead, the evidence is of questionable impeachment value at best. On the instant record, Petitioner has not come close to demonstrating "'that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Perkins*, 133 S. Ct. at 1928 (quoting *Schlup,* 513 U.S. at 329). *See e.g., Carriger,* 132 F.3d at 477 (rejecting freestanding actual innocence claim despite chief prosecution witness essentially recanting, because, among other things, the petitioner had "presented no evidence, for example, demonstrating he was elsewhere at the time of the murder, nor [was] there any new and reliable physical evidence, such as DNA, that would preclude any possibility of [the petitioner's] guilt.").

Further, if Petitioner's actual innocence claim were construed as a gateway claim for his claims of ineffective assistance of counsel or prosecutorial misconduct, he would still fail to satisfy *Perkins*. To pass through the *Schlup* gateway, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup,* 513 U.S. at 316. In *Perkins,* the Supreme Court "stress[ed] once again that the *Schlup* standard is demanding. The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Perkins*, 133 S.Ct. at 1936 (quoting *Schlup,* 513 U.S. at 316). As discussed above, the evidence Petitioner relies upon is merely collateral to his case and has little, if any, bearing on his actual innocence. *See e.g.,*

*Calderon v. Thompson*, 523 U.S. 538, 565–66 (1998) (noting that newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself[,]" "provides no basis for finding" actual innocence). At bottom, the evidence cited by Petitioner to support his actual innocence claim "is insufficient to meet the actual innocence bar; instead, adequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.' *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir.2005). Only such 'powerful' evidence can establish that it is more likely than not that no jury would have convicted a habeas petitioner." *McDowell v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013); *Cf. Carriger,* 132 F.3d at 477. Consequently, there is no basis to excuse Petitioner's untimeliness based upon the actual innocence gateway. Therefore, Petitioner's federal habeas Petition is untimely filed.

### III. CONCLUSION

Petitioner's federal habeas Petition was due on February 24, 2015. Because Petitioner did not file his Petition until March 30, 2015, his Petition is untimely filed under the AEDPA and should be dismissed. Alternatively, if the Court were to determine that direct review for purposes of §2244(d)(1)(A) concluded on March 13, 2014, when the Arizona Supreme Court denied Petitioner's request for an additional extension to file a petition for review, the instant Petition, nonetheless, remains untimely filed and should be dismissed.

### IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, dismiss Petitioner's Petition under 28 U.S.C. §2254 for a Writ of Habeas Corpus (Doc. 1) as untimely filed.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **FOURTEEN (14) DAYS** after being served with a copy of this Report and Recommendation. A party may respond

to another party's objections within **FOURTEEN (14) DAYS** after being served with a copy. Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from the District Court to do so.  If objections are filed, the parties should use the following case number: **CV 15-126-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to review.

Dated this 7th day of July, 2016.

_____
Bernardo P. Velasco
United States Magistrate Judge